And what you're going to have to do, you can adjust the height of the lectern. There's a button there on your right. And I would address both counsel and remind you that with the telephone link up, you're going to need to stay close to the microphone so that Judge Loken can hear what's going on. With that, you may proceed. Good morning. May it please the Court that Mr. Narayan and Judge Loken, if at any point you can't hear me, feel free to let us know. Thank you. I will. All right. So September two years ago, well, I should announce William, Mark Meyer appearing on behalf of appellant Derek Hughes-Doby. As I was saying, in September 2015, Derek Hughes-Doby, who had a license to carry a firearm, drove to a public firing range where he allowed another individual, Triundis Howell, who was a felon, to use the gun temporarily for a short time to shoot at targets. Let me ask you a preliminary question, please, counsel. Why doesn't the district judge's alternative sentence undermine your claim about the applicability of this guideline enhancement? Well, it wasn't in a sense an alternative sentence. I think it was the same sentence, as I recall, only packaged differently. She gave the same sentence even if the guidelines were not applicable, didn't she? Right. I suppose the argument then would be that the sentence is unreasonable under any terms. Okay. Well, that would be a different argument, I guess, but okay. So Mr. Hughes-Doby, even though he had a license to or a permit to carry a weapon, used marijuana, was a marijuana user. So it was illegal for him to possess the firearm. He subsequently pleaded guilty to two counts of possession of a firearm as a user in violation of 18 U.S.C. section 924G, and he was sentenced to 57 months in prison. The guideline sentencing range was based on a four-level enhancement for possession of a firearm in connection with another felony offense. And specifically, the other felony offense was a violation of 922D1, which makes it illegal for any person to sell or otherwise dispose of a firearm to a felon. So apart from the issue that Judge Arnold raised, the preliminary issues would be, did Mr. Hughes-Doby violate 922D1 by handing on a temporary and fleeting basis a firearm to Triundis Howell? Counsel, would you clarify one question for me? Was the Glock fired at the shooting range the same firearm as was thrown from the vehicle after Edward's shooting? I don't believe the Glock was thrown from the vehicle, if my memory is correct. The firearm that was thrown from the vehicle was a .22 caliber pistol that subsequently another Howell, Cecil Howell, admitted to possessing. So they're two different guns. I thought Triundis Howell was the felon he handed to at the shooting range, not Cecil. Right, the gun that the Glock was shared at the range, the .22 I think was also there, but there was no plea that Mr. Hughes-Doby, my client, ever possessed that weapon, and he didn't plead guilty to possessing that weapon. So it's a little confusing. Both guns were at the range. The .22 was thrown out of the vehicle, but Mr. Hughes-Doby didn't possess that firearm. In that firearm, the .22 is not the basis for the 922D. I understand that. 922D was originally applied only to commercial firearms dealers. Congress wanted to close a loophole whereby people who had a permit to carry or who could legally obtain a firearm would do so and then give it to a felon. So the statute was amended so that it was illegal for any person to sell or otherwise dispose of a firearm. So the question is, what does sell or otherwise dispose of? To sell, is that basically irrelevant? Does the statute mean it's illegal for any person to dispose of a firearm to another? If you don't give sell any weight, then otherwise dispose of is broader, I would assume. But the principle of aegisdum generis, if you've got a string of words, one of the words is specific, the word following it is more general, then it's assumed that the following word is of the same nature and character as the preceding word. To otherwise dispose of must have some similarity to sell. Otherwise, sell is just, like I said, irrelevant. And there was nothing, there was no finality. Even the word dispose of connotes a finality. We dispose of a case, that means it's done. You'll dispose of this appeal, you'll issue a mandamus or a procedendo. So since there was no element of finality to Mr. Hughes-Dobie handing a gun to Mr. Holland. Suppose he just rented it to him for a year. Would that satisfy your proposition that there has to be something final about the transfer before this kind of enhancement can be applied? Rented it to him so that the buyer took possession and went off on his own and then came back a year later and handed it back? Yeah, I think that would qualify. Why is that finality? Because once you take possession for a year, that's final enough for purposes of the statute. But possession for how long? I mean, I don't know. Don't we have cases that say that transferring possession is enough to support an enhancement under this guideline? There are cases that indicate that if you give up possession to another person. Yeah, did that happen here? No, they shared possession. Mr. Hughes-Dobie was there. He supervised, he was in on it, as opposed to giving it up to somebody where it's sort of an out of sight rule. If the person who's sharing possession loses sight of it, then I think maybe the statute would apply. Otherwise, if it remains in their possession, they can observe what's happening. Well, in the law of personal property, there's a distinction drawn between possession and mere custody, as it's sometimes said. So perhaps your argument sort of follows along the common law notion that sometimes you can have something in your hand and not possess it, simply have custody of it. Well, I like that argument. Something that falls short of possession. I think that would be a good way of distinguishing it, when it's illegal and when it's not, I think. And it would make sense, too, given that the law relates to dealing with property, which obviously a firearm is. Well, could you enlighten me a little on your double-counting argument? I didn't quite understand it. Well, that, frankly, was an argument that my client directed me to make. Okay. And essentially, the argument is that I have to go back and review, because I didn't actually prepare for that question. Well, that's all right. I have the brief. I thought you might want to enlighten me a little bit on it, but I have the brief. Okay. All right. I'll rely on what's in the brief. The other question, or the other point I want to make with respect to the 922D violation, is even if handing a firearm to another felon on a temporary and fleeting basis is a violation of 922D, is that, under those circumstances, another felony offense? Or is it part of the same possession offense, possession of a firearm as a felon? And this issue keeps coming up from the Northern District to the Eighth Circuit, and you keep deciding it. And this is kind of a different gloss on it. Are you having an eye on what statute that causes these kinds of difficulties? Yeah. There's the carry a weapon statute that causes problems. And this is a little bit different because it's a different offense. Counsel, why doesn't Walker control this panel on that issue? Well, Walker, the other felony offense in Iowa was, like Judge Arnold noted, the other felony offense in Walker was an Iowa statute. The other felony offense in this case is a federal offense, 922D. So 922D covers different ground than the Iowa carry a weapon statute. And here, if transfer in any way, which is how we interpret it in the Northern District of Iowa, any transfer means to sell or dispose of a firearm. If the statute is so broad that any transfer of possession is another felony offense, under the circumstances of this case where the transfer was very brief and fleeting, it was basically shared possession, and that's the same offense. So that's why Walker involves a different statute but the same general topic here on it. But, yeah, the Walker analysis says if the elements of the offenses are different, they're distinct felonies. And there's certainly different felonies here in terms of the elements. Well, I'm relying on the application note to the relevant guideline, which excludes from the four-level enhancement the firearm offense. And so I guess it's just how do you look at the question of the. I mean, does it have to be the same elements, or does it have to be essentially the same conduct? And I think of note is the fact that we're not talking about a minor enhancement of four levels. In this case, increase the sentence, the minimum sentence from at least 37 months up to 57. So presumably the conduct would have to be sufficient to justify that degree of enhancement. And because the conduct that underlies both offenses is essentially the same, then it seems unwarranted to apply such a significant enhancement. And I think Judge Malloy and another judge have since suggested that maybe we're applying Walker too broadly. Well, but counsel, you talk about the conduct here. We have four guys go to a shooting range and tune up their shooting eyes, and then they get in the car and go out and kill someone. Why isn't that a more serious stream of events than the 922G violation by itself? Well, Judge, respectfully, I think there's an assumption that you're making that was never proved. None of the four individuals were held accountable for the shooting that led to the death of Mr. Edwards, and certainly not Mr. Hughes. I thought one of them was convicted or admitted. No. Conduct. I'm out of time, Your Honor. You can answer, please. Just to answer your question, then, the government sought to impose a cross-reference for the shooting, the homicide of Mr. Edwards in the case of Cecil Howell, but the judge refused, found that there wasn't sufficient evidence to support that. And none of the other co-defendants were. That cross-reference wasn't applied to any of the co-defendants, including Mr. Hughes, though. Thank you. Thank you.  Thank you, Your Honor. Your Honor, the defendant in this case, Mr. Hughes-Dobie, knew his co-defendant, Triandis Howell, was a felon. And when he went to the shooting range with Triandis Howell and the other co-defendants, he provided his firearm. I'm having trouble hearing you, that's for sure. Okay. You can raise the podium a little, if you'd like. Thank you. Judge Loken, is that a little clearer? Much better. Thank you. The defendant, Derek Hughes-Dobie, when he went to the shooting range with his co-defendants, knew that his co-defendant, Triandis Howell, was a felon. And he provided his gun to Triandis Howell for Triandis Howell to shoot. At that moment, he possessed that firearm in connection with another felony offense. What's the state of the record with respect to how long this possession lasted? What the record reflects, Your Honor, is that they went to the shooting range and that Mr. Hughes-Dobie's guns were used by all of the co-defendants to shoot the gun at the shooting range. So we're simply talking about a period of time at the shooting range. After they left the shooting range, the guns ended up back in the car,  How long did the transferee have the gun actually in his hand or under his control? The record doesn't reflect a precise time. What the record does reflect is that they spent some time at the shooting range, attempted to shoot three separate firearms, and then left the shooting range to the scene of the ultimate dispute where Mr. Edwards died. But the basis for the enhancement was the transfer of a gun to Mr. Howell at the shooting range. Counsel, did Trundles have dominion at the range? Yes, Your Honor. When Mr. Howell held the gun to shoot the gun, he possessed the gun and had dominion or control over the gun because he had no direct possession. What's your best Eighth Circuit cite on constructive possession for that answer? What the Eighth Circuit says for jury instructions on possession of a firearm is that direct possession, that is actual physical control over a thing, is sufficient. Counsel, the cases talk about dominion. The briefs here talk about dominion, which is more than mere custody. And I'm just asking you, what makes it more than mere custody here? What makes it more than mere custody is he had dominion or control over the firearm when he possessed the firearm and shot the firearm at the shooting range. So if Judge Shepard and I are at the driving range and I say, can I hit one with your driver and he hands it to me and I do, I have dominion of his driver? You'd have dominion, control, and possession of his driver on what, 922? And your best Eighth Circuit, what case establishes dominion as opposed to custody? Your Honor, the government's position here is that a violation of 922D takes place when another person comes into possession of the firearm. And in Judge Loken, your analogy where you're at the driving range hitting golf balls with another individual, when the other individual has possession of the club, they have possession over that club such that the possession's been transferred from you to the other individual. And what the Stegmeyer case stands for is that the language sell or otherwise dispose of, an individual disposes of an item to another individual when that other individual comes into possession of that item. And the law on possession in this circuit when it comes to unlawful possession of firearms is clear that direct control over an item constitutes possession. Mr. Howell was guilty of violating the possession statute, possessing a firearm as a felon, when Mr. Hughes-Dobie handed him the gun at the shooting range simply based on that conduct. Under the Stegmeyer case, a transfer takes place as soon as the transferee comes into possession of the firearm. And so at that moment, that transfer... But that wasn't the facts in Stegmeyer. That's true, your Honor. The facts in Stegmeyer were different. You're not quoting from the opinion either. You're just glossing it. Yes, your Honor. So with respect to the facts of Stegmeyer, Stegmeyer involved the transfer of an RV from Mr. Stegmeyer to a different individual, Mr. Kelly. There was a gun in the RV. Mr. Kelly was... I read the case last night. You don't have to tell me the facts. I just gave you... They're very distinguishable. Sure, your Honor. So to quote from Stegmeyer, at 701 Fetzer, at 579, this court said that to dispose of occurs when the recipient, quote, comes into possession, control, or power of disposal of a firearm. And so the government's position here is that Treondas Howell came into possession, control, or power of disposal of a firearm, here possession, when Derek Hughes-Dobie handed him the gun at the shooting range and he shot the gun at the point that he's holding the gun and shoots the gun as he's in possession of the gun, certainly for the purposes of 922 G, in terms of possessing a firearm as a felon. Now, to quote further from Stegmeyer, Stegmeyer discussed an alternative definition of disposa from the Seventh Circuit, quote, to transfer a firearm so that the transferee acquires possession of the firearm as compared to this court's definition that dispose of occurs when a recipient comes into possession, control, or power of disposal of a firearm. What this court said in Stegmeyer is that under either definition, a recipient's possession is sufficient proof that a defendant disposed of a firearm. That's Stegmeyer at 579 and 580, quoting the Seventh Circuit's opinion in the United States versus Jefferson. But really the same definition. Before we, one last question. Would you, have you got a best case from any circuit that's factually like this or my driving range example? Not specifically factually limited to a period of time like that. The government's view is that the best case from any circuit is United States versus Jackson out of the Seventh Circuit. But admittedly, Judge, that is a case where Mr. Jackson provided to Mr. Dirks the firearm for a longer period of time. He actually gave him the firearm for him to then have custody of the firearm. What is the effect of Judge Reed's alternative sentence here? The effect of Judge Reed's alternative sentence is that even if the court erred in applying the four-level enhancement under 2K2.1b6, that error is harmless because the district court said that it would have otherwise arrived at the same sentence in this case. The court at the sentencing hearing described its basis for the alternative sentence. It said that with regard to the sentences of co-defendants, there are substantial differences between the four, and the court found that its sentence that day would not create unwarranted sentencing disparities between the defendants. With respect to Mr. Hughes-Dobie, it cited his knowing transfer of a firearm to a felon, his history of distributing marijuana, the multiple firearm-related enhancements applicable to him, and the court said, quote, at page 67 of the sentencing transcript, so those would be the considerations that would have me still arrive at a 57-month sentence even if my guideline computation is, according to the circuit, not correct. So even if this court were to find that the four-level enhancement under 2K2.1b6 is error, that error would be harmless because the court both found that it would give the same sentence absent the application of that enhancement, and also set forth an adequate basis for that alternative sentence, inciting specific factors regarding the defendant that it found to be aggravating. What's important to note regarding sell or otherwise dispose of is that it is phrased in the injunctive, excuse me, in the disjunctive. Here the government's position is not that Mr. Hughes-Dobie sold the firearm to anyone, but that he otherwise disposed of the firearm to an individual that he knew was a felon, and consistent with this court's case law in Stegmaier, the transfer to Mr. Howell at the range, at that moment where Mr. Howell held the gun, was sufficient to support that enhancement. Regarding the double-counting argument raised by Mr. Meyer in his reply brief and that Judge Arnold asked about up here, the guideline 2K2.1 provides for a base offense level of 20 if an individual both possesses a semi-automatic firearm capable of accepting a large-capacity magazine and one of three additional conditions are met, that is the defendant is either a prohibited person or he transferred a firearm to a prohibited person. Here both are true. The defendant was a prohibited person by way of being a drug user at the time he possessed the firearm, and so he was a base offense level of 20 by virtue of those two conditions being set forth in the guideline being met, that the firearm did have that aggravating characteristic and that he himself was prohibited when he possessed it. And so there are no double-counting concerns with the application of a four-level enhancement for that additional condition that did not need to be met in order to reach a base offense level of 20. And so the double-counting argument advanced by Mr. Hughes-Dobie should be rejected. With respect to the argument that transfer of a firearm to a prohibited person is not another felony offense, in the government's view, Judge Loken correctly points out that Walker is controlling on that question. The question in Walker or the question the court analyzed in Walker and some of its progeny regarding the carrying weapons cases is whether an individual is, quote, doomed to automatically commit the additional felony, and that would be beyond the mere possession of felony for which they're being prosecuted. Here an individual is not doomed to commit the additional felony of transferring a firearm to a prohibited person merely by possessing a firearm as a prohibited person. There is an additional act that needs to be done, that is the transfer of the firearm, having knowledge that the recipient of that firearm is prohibited. Under Walker, that additional element takes it out of Note 14c as it's not the mere possession offense. So this court should both reject the argument that it's not another felony offense and the factual argument that the defendant did not possess a firearm in connection with that. And finally, in the alternative, as Judge Arnold points out, this court should find that any error on that point is harmless because of the court's alternative sentence finding. It hasn't come up yet. The defendant does, though, argue in his brief that the government breached its cooperation agreement with the defendant by failing to make a motion under 5K1.1. This court should reject that argument as well. The defendant, Mr. Hughes-Dobie, did attempt to, or did testify, pursuant to a cooperation agreement with the government at a co-defendant sentencing hearing, Mr. Howell, in which he described what happened during that dispute, that Mr. Howell was the one striking the victim with the firearm, with the butt of the firearm, when that firearm went off and the victim died. He proceeded to, on cross-examination, make several statements that the court deemed to be false, denying prior and consistent statements, and denying other impeachment information such that the court elected not to credit its testimony. The government, in its plea agreement with Mr. Hughes-Dobie, reserved the 5K decision to itself, the United States Attorney's Office, in its discretion. Counsel, you're just repeating your brief. Why are you opening this up to a rebuttal argument? I'm sorry, the question is... It wasn't argued. The opposing counsel left it to the briefs. You're not willing to do that, so now we should allow rebuttal arguments, shouldn't we? No, it's your argument. I'm just pointing out the adverse consequences of the way you argue it. As to the sentence, find that the district court did not err in calculating its advisory guideline range and finding that the court did not plainly err in not finding sua sponte that the government breached the plea agreement. Thank you, counsel. Does counsel have any time left? No, Your Honor. All right. Counsel, I'll give you a minute to wrap up if you'd like. Thank you. We don't want to get behind here the first argument. Just with respect to Judge Arnold's question about how long did Howell share the firearm with Mr. Hughes-Dobie, the pre-sentence investigation report, paragraph 21, indicates that Howell was interrogated, stated that he used the pistol to shoot about 30 to 50 rounds, or about one box... I'm sorry, I'm having trouble hearing you. I'm sorry. 30 to 50 rounds, as long as it takes to shoot off one box of ammunition. That was how long, and then he gave the gun back. And that's really all that I have time for. Thank you. All right, thanks. Thank you, counsel. Counsel, thank you for your argument, and the case is submitted. And you may stand aside.